UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MATTHEW YORK, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Nos.: 1:14-CR-092-HSM-SKL-1 |
| | )       1:15-CV-284-HSM |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM & OPINION**

This is a pro se prisoner's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 [Doc. 107[1]]. Respondent has filed a response in opposition thereto [Doc. 110]. For the reasons set forth below, the Court finds that Petitioner's § 2255 motion [Doc. 107] is without merit and it will be **DENIED**.

**I.    BACKGROUND**

Petitioner pleaded guilty to count one of the indictment against him, specifically conspiracy to distribute methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) [Doc. 21 p. 1]. In his plea agreement, Petitioner agreed to plead guilty to "[a]n agreement to violate the drug laws, namely to distribute 500 grams[2] or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance" [*Id.*]. The plea agreement provided that "[t]his violation is punishable by a mandatory minimum of 10 years up to life imprisonment," among other things [*Id.*]. Also in the plea agreement, Petitioner stipulated that he had told agents that he and his codefendant had travelled to Athens, Tennessee

---

[1] All citations to the record are to the criminal case.

[2] The Court takes judicial notice that five hundred grams is 1.102311 pounds.

to buy one pound of methamphetamine from a different individual, that they had bought one pound of methamphetamine from that individual on May 20, 2014, that Petitioner and his codefendant planned to distribute the methamphetamine to others in the Eastern District of Tennessee, and that he was involved in a conspiracy to distribute more than five-hundred grams of a mixture and substance containing methamphetamine, among other things [*Id*. at 3]. Petitioner's plea agreement also provided that the government would not oppose a three-level reduction of Petitioner's offense level under certain circumstances [*Id.* at 4–5].

At Petitioner's change of plea hearing, prior to Petitioner entering his plea of guilty, Petitioner agreed that he had read the indictment, that he had had time and opportunity to discuss his case with his attorney, and that he was satisfied with his attorney's representation [Doc. 109 p. 8–9]. Petitioner also stated that he had had adequate time and opportunity to read and discuss the plea agreement and the supplement thereto with his attorney prior to signing them, that he understood the terms of his plea agreement, that no one had made any promise or assurance to him that was not contained in the plea agreement in order to persuade him to accept the plea agreement, and that no one had threatened him in any way to persuade him to accept the plea agreement [*Id.* at 11–12].

Also at the change of plea hearing, the indictment was read, the Court explained the elements of count one of the indictment, and Petitioner agreed that he understood the charge to which he was pleading guilty [*Id.* at 17–18]. Further, counsel for the government stated that both Petitioner and his codefendant faced a mandatory minimum sentence of imprisonment of ten years up to a statutory maximum sentence of life [*Id.* at 18–19]. After counsel for the government stated this sentence, Petitioner again stated that he understood all possible consequences of his guilty plea, including the plea agreement and what counsel for the government and the Court had told

him, and that he still wanted to plead guilty [*Id.* at 20]. Petitioner also agreed that he had discussed the mandatory minimum sentence with his attorney [*Id.* at 20–21]. Moreover, Petitioner agreed that he had reviewed the factual basis of the plea agreement with his attorney prior to signing the agreement and that it was true and accurate in all respects [*Id.* at 24–25]. Petitioner subsequently entered a plea of guilty to count one of the indictment [*Id.* at 27–28].

Accordingly, on February 27, 2015, the Court entered a judgment against Petitioner for one-hundred and twenty months' imprisonment, the mandatory minimum sentence [Doc. 71]. In accordance with the appeal waiver in his plea agreement, Petitioner did not file an appeal of the judgment against him. Rather, Petitioner filed the instant § 2255 motion in which he sets forth two claims for ineffective assistance of counsel.

## II. APPLICABLE LAW

The Sixth Amendment provides, in pertinent part: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. This includes the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687. As with all claims under § 2255, Petitioner has the burden of proving ineffective assistance of counsel. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A party asserting an ineffective assistance of counsel claim must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires a claimant to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.

Where a petitioner pleaded guilty, he must show that, but for counsel's deficient performance, he would not have pleaded guilty to establish prejudice. *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). To demonstrate a reasonable probability that he would have gone to trial, the petitioner must present evidence apart from a lone assertion that but for counsel's error he would have pleaded not guilty and gone to trial. *Id.* at 59.

The Supreme Court has emphasized a claimant must establish both prongs of a claim for ineffective assistance of counsel to meet his burden, and if either prong is not satisfied, the claim must be rejected. *Strickland*, 466 U.S. at 69.

### III. ANALYSIS

First, Petitioner asserts that counsel was ineffective for allowing Petitioner "to plead to an additional pound of ghost drugs to raise his sentencing level to a mandatory minimum" [Doc. 107 p. 4]. Petitioner states that counsel, the Court, and the prosecuting attorney failed to instruct him

that an additional pound of drugs had raised his sentence to a mandatory minimum level of one-hundred and twenty months' imprisonment, which was an essential element of the case [*Id.* at 5]. Petitioner specifically alleges that he had no drugs in his possession or reach and that his passenger surprised Petitioner by admitting that he was looking for drugs, which was completely unknown to Petitioner [*Id.* at 6]. Petitioner therefore states that the government provided "ghost drugs" to support the charge against him in violation of his due process rights and that, had he known this, he would have chosen to go to trial [*Id.*].

Petitioner also claims that the transcripts reflect that the Court did not advise him of the elements of the crime, ascertain whether he understood the elements of the crime, and determine whether a factual basis for the conviction was admitted [*Id.* at 6–7]. Petitioner further alleges that his counsel coerced him and lied to him about the drug amount and his sentence, including stating that Petitioner would be sentenced under the Fair Sentencing Act and would receive a three point sentence reduction for acceptance of responsibility, and that the Court "committed nonfeasance of office and was complicit in the acceptance of unconstitutional guilty plea" [*Id.* at 7–8]. Petitioner therefore alleges that his sentence was not knowing and voluntary and that he would not have pleaded guilty if he had been made aware of the full circumstances of his guilty plea [*Id.*].

Petitioner, however, has failed to establish that he is entitled to relief under § 2255. It is unclear what Petitioner means by asserting that counsel allowed him to be held responsible for "ghost drugs" that raised his sentence to a mandatory minimum of ten years imprisonment.[3] As set forth above, however, Petitioner, admitted in his plea agreement that he had conspired "to

---

[3] While Respondent correctly points out that Petitioner's presentence investigation report noted that three pounds of methamphetamine was "a conservative and reasonable estimate of [Petitioner's] offense" [Doc. 53 p. 5], this estimate did not ultimately affect Petitioner's sentence in any way, as Petitioner received the mandatory minimum sentence for the amount of drugs to which he stipulated in his plea agreement that he had conspired to distribute.

5

distribute 500 grams or more of a mixture and substance containing methamphetamine, a Schedule II controlled substance" and the plea agreement specifically noted that "[t]his violation is punishable by a mandatory minimum of 10 years up to life imprisonment," among other things [Doc. 21 p. 1].

Further, the transcript of Petitioner's change of plea hearing establishes that Petitioner stated under oath that he had discussed his plea agreement and the mandatory minimum sentence set forth therein with his counsel, was satisfied with his counsel, and understood the terms of his plea agreement, all elements of the crime to which he was pleading guilty, and the mandatory minimum sentence for that crime, all of which were explained in detail at the change of plea hearing prior to Petitioner entering a plea of guilty and prior to the Court sentencing Petitioner to the mandatory minimum sentence. "[S]olemn declarations in open court carry a strong presumption of verity," *Blackledge v. Allison*, 431 U.S. 63, 74 (1977), and a petitioner is bound by such statements where the court has followed Rule 11 procedure. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986). As such, it is apparent that Petitioner's guilty plea was knowing and voluntary.

As Petitioner's guilty plea was knowing and voluntary and the Court sentenced Petitioner to mandatory minimum sentence for the charge to which he pleaded guilty, Petitioner cannot establish that he is entitled to relief for any of his claims of ineffective assistance of counsel.

IV. **CONCLUSION**

For the reasons set forth above, Petitioner is not entitled to relief under § 2255 and his § 2255 motion [Doc. 107] will be **DENIED**. Thus**,** under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability ("COA") should be granted. A COA should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28

6

U.S.C. § 2253(c)(2). To warrant a grant of a COA, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473 (2000). After reviewing Petitioner's claims for ineffective assistance of counsel, the Court finds that reasonable jurists could not conclude that they deserve further review, as Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, a COA will not issue.

Further, the Court **CERTIFIES** that any appeal from this action would not be taken in good faith and would be totally frivolous. Accordingly, this Court will **DENY** Petitioner leave to proceed *in forma pauperis* on appeal. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE JUDGMENT ORDER WILL ISSUE.**

**E N T E R :**

  */s/ Harry S. Mattice, Jr.*
 HARRY S. MATTICE, JR.
 UNITED STATES DISTRICT JUDGE